**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**

| | |
|---|---|
| LAWRENCE ARRINGTON,<br><br>Plaintiff,<br><br>v.<br><br>ROGERS CARTAGE CO., INC.;<br>TANKSTAR USA, INC.;<br>CENTERLINE DRIVERS, LLC;<br>CLEAN HARBORS, INC.; and<br>DOES 1 through 20,<br><br>Defendants. | Civil Action No. 2:26-cv-00233<br><br>**COMPLAINT**<br><br>**JURY DEMAND REQUESTED** |

## COMPLAINT

Plaintiff Lawrence Arrington, by and through undersigned counsel, alleges as follows:

## I. INTRODUCTION

1. This action arises from Plaintiff's prolonged, repeated, and cumulative occupational exposure to hazardous chemicals, toxic substances, fine particulate matter, and hazardous industrial environments while working in chemical transport and related operations for and at the direction of Defendants.

2. Over the course of his work, Plaintiff was required to transport hazardous materials, work around chemical residues and particulate matter, enter or work in close proximity to enclosed and poorly ventilated spaces containing hazardous substances, and perform work in environments where the protective equipment provided was inadequate for the hazards involved.

3. Defendants failed to provide reasonably safe working conditions, adequate respiratory protection, adequate protective equipment, adequate warnings, adequate confined-space

protections, adequate ventilation, and adequate safety procedures, despite knowing or having reason to know that Plaintiff's work exposed him to dangerous chemicals and other hazardous substances.

4. As a direct and proximate result of those exposures and Defendants' acts and omissions, Plaintiff developed renal cell carcinoma with metastatic disease and suffered severe and continuing physical, emotional, and economic injury.

5. After Plaintiff disclosed his diagnosis and provided medical documentation, including restrictions against further chemical-exposure work, Defendants Rogers Cartage Co., Inc. and Tankstar USA, Inc. terminated Plaintiff's employment and/or caused his employment to be terminated.

## II. PARTIES

6. Plaintiff Lawrence Arrington is an adult citizen and resident of the State of Alabama.

7. Defendant Rogers Cartage Co., Inc. is a corporation incorporated under the laws of Wisconsin, with its principal place of business at 611 S. 28th St., Milwaukee, Wisconsin 53215. Rogers employed Plaintiff and exercised control over his assignments, equipment, and work conditions.

8. Defendant Tankstar USA, Inc. is a corporation incorporated under the laws of Wisconsin, with its principal place of business at 611 S. 28th St., Milwaukee, Wisconsin 53215.

9. Upon information and belief, Tankstar is the parent, controlling affiliate, and/or joint employer with respect to Rogers, exercised centralized control over policies, safety procedures, and employment-related decisions affecting Plaintiff, and participated in decisions concerning Plaintiff's continued employment.

10. Defendant Centerline Drivers, LLC is a Nevada limited liability company, with a principal address at 1015 A Street, Tacoma, Washington 98402. Nevada filings identify Richard Christensen and Todd Gilman, both at 1015 A Street, Tacoma, Washington 98402, as officers and/or managers of Centerline Drivers, LLC.

11. Upon information and belief, Centerline's members and/or managing members are citizens of Washington and not Alabama. Upon information and belief, Centerline placed Plaintiff into assignments involving hazardous chemical exposure and exercised authority over those assignments and the conditions under which they were accepted or performed.

12. Defendant Clean Harbors, Inc. is a corporation incorporated under the laws of Massachusetts, with its principal place of business at 42 Longwater Drive, Norwell, Massachusetts 02061.

13. Upon information and belief, Clean Harbors participated in, controlled, supervised, managed, contracted for, and/or was responsible for hazardous waste or hazardous operations connected to Plaintiff's work, including safety-related aspects of those operations.

14. Plaintiff is ignorant of the true names and capacities of Defendants sued herein as Does 1 through 20, and therefore sues those Defendants by fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

## III. JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states. Plaintiff is a citizen of Alabama. Rogers Cartage Co., Inc. is a citizen of Wisconsin. Tankstar USA, Inc. is a citizen of Wisconsin. Clean Harbors, Inc. is a citizen of Massachusetts.

16. Upon information and belief, Centerline Drivers, LLC is a citizen of Washington and not Alabama because its members and/or managing members are believed to be citizens of Washington. Complete diversity exists between Plaintiff and all properly named Defendants.

17. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District, including supervision of Plaintiff's employment relationship while he resided and worked from Alabama, employment-related communications directed to Plaintiff in Alabama, receipt and handling of Plaintiff's medical restrictions affecting his continued employment in Alabama, diagnosis and treatment in this District, and resulting harm suffered by Plaintiff in this District.

## IV. PERSONAL JURISDICTION

18. This Court has personal jurisdiction over Rogers Cartage Co., Inc. because Rogers maintained and supervised Plaintiff's employment relationship while Plaintiff resided and worked from Alabama, directed work assignments and employment-related communications to Plaintiff in Alabama, and participated in decisions affecting Plaintiff's continued employment in Alabama.

19. This Court has personal jurisdiction over Tankstar USA, Inc. because Tankstar exercised control over policies, safety procedures, and employment-related decisions affecting Plaintiff while Plaintiff resided and worked from Alabama, including directing or supervising work through locations such as Columbus, Georgia, and including decisions made after receipt of Plaintiff's medical restrictions and decisions affecting Plaintiff's continued employment in Alabama.

20. This Court has personal jurisdiction over Centerline Drivers, LLC because Centerline placed Plaintiff into assignments in different areas of the United States while Plaintiff resided in Alabama and directed assignment-related opportunities and communications to Plaintiff in Alabama.

21. Upon information and belief, this Court has personal jurisdiction over Clean Harbors, Inc. because Clean Harbors participated in or controlled operations connected to work performed by Plaintiff through an employment relationship supervised and directed in part while Plaintiff resided and worked from Alabama.

## V. FACTUAL ALLEGATIONS

22. Plaintiff worked as a commercial driver transporting hazardous materials and industrial chemicals.

23. During the course of his work, Plaintiff was repeatedly assigned to job sites and work activities involving chemical exposure, including tanker transport, unloading, handling contaminated equipment or residues, and work in or around enclosed spaces containing chemical substances and fine particulate matter.

24. Plaintiff's exposures occurred over time across multiple employers, assignments, and job sites.

25. Defendant Centerline Drivers, LLC sent Plaintiff to different jobs and customer sites across multiple states and placed Plaintiff into assignments involving hazardous work environments.

26. Centerline sent Plaintiff to multiple companies for work assignments, including Standard Logistics and other customer sites involving hazardous work environments.

27. Plaintiff also worked in connection with operations involving a separate Ohio company that, upon information and belief, contracted through Clean Harbors, Inc. for hazardous operations involving chemicals and related materials.
28. Plaintiff's most recent employer relationship was with Rogers Cartage Co., Inc. under Tankstar USA, Inc.
29. Rogers assigned Plaintiff to chemical transport and related work involving hazardous exposure.
30. Tankstar controlled or materially influenced policies governing safety, work conditions, and employment-related decisions affecting Plaintiff.
31. Plaintiff was exposed to hazardous chemicals, toxic residues, vapors, acids, fine dust, and other industrial contaminants through inhalation, skin contact, and repeated occupational contact. These exposures were particularly significant during assignments performed at or through Standard Logistics, to which Centerline sent Plaintiff for work.
32. Some of the work was so hazardous that there was no way to avoid the particles.
33. Plaintiff worked around fine ashes, fine dust, enclosed unloading environments, and hazardous materials that were dumped, loaded, tied down, offloaded, and transported.
34. In some assignments, Plaintiff had to enter the back of a trailer or similarly enclosed area containing acids and other hazardous substances in order to tie down the load.
35. Plaintiff had to stand in those hazardous environments for only a few seconds at a time, then step back out to breathe, then re-enter and continue the work.
36. Those conditions were unnecessary because the load could have been tied down at the plant where sufficient equipment and personnel were available.

37. Defendants provided personal protective equipment that was inadequate for the hazards Plaintiff faced.
38. The protective equipment was insufficient and, in some instances, flimsy.
39. The masks provided in some assignments were paper masks. Centerline did not provide cartridge respirators for certain work, and the equipment used in other assignments was inadequate.
40. The equipment provided was not sufficient for some of the things Plaintiff was required to do.
41. Plaintiff could smell chemicals through the provided equipment, demonstrating that it was ineffective for the work being performed.
42. Defendants failed to provide reasonably adequate warnings, hazard communication, respiratory protection, confined-space protections, ventilation, and other reasonable safety measures for the work at issue.
43. Plaintiff performed both hazardous and non-hazardous work during his employment with Rogers.
44. Some Rogers assignments involved cooking oil or other non-hazardous work, in addition to hazardous-material assignments.
45. On or about July 5, 2025, Plaintiff presented for medical evaluation after discovery of a neck mass and related symptoms.
46. During a July 7, 2025 to July 10, 2025 hospitalization, Plaintiff was treated for anemia, hypertension, a kidney mass, and a neck mass.

47. Imaging performed in July 2025 showed an enlarged heterogeneous left kidney with a mass, retroperitoneal lymphadenopathy, left supraclavicular lymphadenopathy, and liver lesions concerning for metastatic disease.

48. On or about July 8, 2025, Plaintiff underwent ultrasound-guided biopsy of a left neck lymph node.

49. The July 8, 2025 biopsy showed metastatic carcinoma most suggestive of renal origin.

50. By July 18, 2025, Plaintiff had been diagnosed with metastatic renal cell carcinoma.

51. Subsequent imaging documented extensive disease involving the left kidney, multiple nodal regions, and the liver, with progression over time.

52. Plaintiff underwent systemic oncology treatment, including immunotherapy and targeted therapy, as part of treatment for metastatic renal cell carcinoma.

53. Plaintiff's disease and treatment course resulted in serious complications, including anemia, acute blood loss anemia, chronic kidney disease, acute kidney injury, hyperkalemia, constipation, edema, ascites, and cancer-related pain.

54. Plaintiff was hospitalized from March 6, 2026 through March 12, 2026 for acute kidney injury, acute blood loss anemia, stage IV chronic kidney disease, constipation, hyperkalemia, and metastatic cancer.

55. Plaintiff's laboratory studies documented substantial anemia and impaired renal function, including hemoglobin of 8.8 g/dL on March 10, 2026, creatinine of 2.55 mg/dL on March 11, 2026, and eGFR of 29 mL/min/1.73m2 on March 11, 2026.

56. Plaintiff's oncology records documented occupational exposure concerns related to prior chemical exposure.

57. On or about October 28, 2025, Plaintiff's treating physician, Martin Barnes, M.D., wrote that, due to concerns regarding prior chemical exposures that may or may not have contributed to the development of Plaintiff's underlying disease, Plaintiff should not return to work environments involving handling, transferring, or direct exposure to chemicals.

58. Apart from those chemical-exposure restrictions, Dr. Barnes stated that Plaintiff could participate in work-related activities as tolerated as his condition improved.

59. Plaintiff provided medical documentation, including Dr. Barnes's restriction letter, to Rogers and/or Tankstar.

60. After Defendants received that medical documentation, Plaintiff was told by Brian, a Rogers manager or supervisor who ran the show there and was acting based on direction from corporate, that the matter was now all about liability and strictly corporate now.

61. Plaintiff further understood from those statements that Defendants would not keep him in his position because of the chemical and hazardous-material nature of the work and corporate concerns about liability.

62. Plaintiff was not provided with a written termination letter, or at minimum does not believe he was ever provided one, despite the termination of his employment. Upon information and belief, representatives of Rogers indicated to Plaintiff's sister, Millette Thomas, that a termination letter would be provided, yet no such letter has been produced.

63. Defendants terminated Plaintiff's employment and/or removed him from work shortly after his disclosure of his diagnosis and the submission of his medical restrictions.

64. Upon information and belief, Tankstar participated in, approved, directed, influenced, or ratified the decision to terminate Plaintiff's employment.

65. Upon information and belief, Defendants did not meaningfully explore or offer available non-hazardous work alternatives to Plaintiff, even though some Rogers work was non-hazardous.

66. As a result of Defendants' conduct, Plaintiff has suffered and continues to suffer severe physical injury, metastatic renal cell carcinoma, chronic kidney disease, acute kidney injury, pain, emotional distress, mental anguish, medical expenses, economic loss, and loss of earning capacity.

## VI. COUNT I: NEGLIGENCE BASED ON UNSAFE ASSIGNMENTS, INADEQUATE PPE, AND HAZARDOUS CHEMICAL EXPOSURE (DEFENDANT ROGERS CARTAGE CO., INC.)

67. Plaintiff re-alleges ¶¶ 25-39, 40-55, and 63.

68. Rogers Cartage Co., Inc. owed Plaintiff a duty to exercise reasonable care to provide reasonably safe work assignments, reasonably safe equipment, reasonably safe working conditions, and adequate protective measures and warnings concerning known or reasonably knowable hazards associated with Plaintiff's work.

69. Rogers breached that duty by, among other things, assigning Plaintiff to hazardous chemical and particulate-exposure work, failing to provide adequate respiratory protection and personal protective equipment, failing to provide adequate warnings and hazard communication, and failing to take reasonable steps to protect Plaintiff from repeated chemical exposure, as alleged in ¶¶ 25-27 and 31-39.

70. Rogers knew or should have known that Plaintiff's work exposed him to hazardous chemicals, hazardous residues, and hazardous particulate matter, and that the protective measures in use were inadequate, as alleged in ¶¶ 28-39.

71. As a direct and proximate result of Rogers's negligence, Rogers caused and/or substantially contributed to Plaintiff's toxic exposures, renal cell carcinoma, metastatic disease, and resulting damages, as alleged in ¶¶ 42-55 and 63.

## VII. COUNT II: NEGLIGENCE BASED ON CONTROL OF SAFETY POLICIES AND UNSAFE WORK CONDITIONS (DEFENDANT TANKSTAR USA, INC.)

72. Plaintiff re-alleges ¶¶ 25-39, 42-55, and 57-63.

73. By exercising direct or indirect control over safety policies, work conditions, operations, and employment-related decisions affecting Plaintiff, Tankstar USA, Inc. owed Plaintiff a duty to exercise reasonable care.

74. Tankstar breached that duty by failing to implement, require, enforce, and/or monitor reasonably adequate safety protections, hazard communication, warnings, protective equipment requirements, and other safeguards for work Tankstar controlled or materially influenced, as alleged in ¶¶ 26-39 and 57-62.

75. Tankstar knew or should have known that Plaintiff's work exposed him to hazardous chemicals, hazardous residues, fine dust, and unsafe conditions, and that reasonable protective measures were not being provided or enforced, as alleged in ¶¶ 28-39.

76. As a direct and proximate result of Tankstar's negligence, Tankstar caused and/or substantially contributed to Plaintiff's toxic exposures, renal cell carcinoma, metastatic disease, and resulting damages, as alleged in ¶¶ 42-55 and 63.

## VIII. COUNT III: NEGLIGENCE BASED ON HAZARDOUS PLACEMENT AND FAILURE TO ENSURE SAFE ASSIGNMENTS (DEFENDANT CENTERLINE DRIVERS, LLC)

77. Plaintiff re-alleges ¶¶ 22-23, 28-39, 42-55, and 63.

78. By placing Plaintiff into hazardous assignments and exercising authority over those assignments, Centerline Drivers, LLC owed Plaintiff a duty to exercise reasonable care.

79. Centerline breached that duty by placing Plaintiff into hazardous assignments without ensuring reasonably safe conditions, without ensuring reasonable protective measures were in place, without ensuring adequate respiratory protection and warnings were provided, and by continuing assignments despite known or reasonably knowable exposure risks, as alleged in ¶¶ 22-23 and 28-39.

80. Centerline knew or should have known that the assignments into which it placed Plaintiff involved hazardous chemical exposure and inadequate safety protections, as alleged in ¶¶ 22-23 and 28-39.

81. As a direct and proximate result of Centerline's negligence, Centerline caused and/or substantially contributed to Plaintiff's toxic exposures, renal cell carcinoma, metastatic disease, and resulting damages, as alleged in ¶¶ 42-55 and 63.

## IX. COUNT IV: NEGLIGENCE BASED ON CONTROL OR RESPONSIBILITY FOR HAZARDOUS OPERATIONS (DEFENDANT CLEAN HARBORS, INC.)

82. Plaintiff re-alleges ¶¶ 24, 28-39, 42-55, and 63.

83. By participating in, controlling, supervising, managing, contracting for, and/or being responsible for hazardous operations connected to Plaintiff's work, Clean Harbors, Inc. owed Plaintiff a duty to exercise reasonable care.

84. Clean Harbors breached that duty by failing to ensure reasonably safe conditions, adequate protective equipment, adequate warnings, and adequate protective measures in connection with hazardous operations to which Plaintiff was assigned, as alleged in ¶¶ 24 and 28-39.

85. Clean Harbors knew or should have known that the operations connected to Plaintiff's work involved hazardous chemical exposure and inadequate safety protections, as alleged in ¶¶ 24 and 28-39.

86. As a direct and proximate result of Clean Harbors's negligence, Clean Harbors caused and/or substantially contributed to Plaintiff's toxic exposures, renal cell carcinoma, metastatic disease, and resulting damages, as alleged in ¶¶ 42-55 and 63.

## X. COUNT V: FAILURE TO WARN (DEFENDANTS ROGERS CARTAGE CO., INC., TANKSTAR USA, INC., CENTERLINE DRIVERS, LLC, AND CLEAN HARBORS, INC.)

87. Plaintiff re-alleges ¶¶ 22-39, 42-55, and 63.

88. Defendants knew or should have known that Plaintiff's assigned work involved hazardous chemicals, hazardous residues, hazardous particulate matter, hazardous enclosed-space conditions, and inadequate protective measures, as alleged in ¶¶ 22-39.

89. Defendants had a duty to provide adequate warnings and hazard information concerning the nature, severity, and consequences of the chemical and enclosed-space hazards to which Plaintiff was exposed.

90. Defendants breached that duty by failing to warn Plaintiff adequately about the dangers associated with the chemical substances, residues, acids, fine dust, enclosed or poorly ventilated environments, and ineffective protective equipment involved in his work, as alleged in ¶¶ 28-39.

91. Defendants also failed to warn Plaintiff that the personal protective equipment being used was inadequate to protect him from the hazards at issue, as alleged in ¶¶ 34-39.

92. Had Plaintiff received adequate warnings and hazard information, Plaintiff would have avoided or refused the exposure-producing work, demanded adequate protection, sought different work conditions, and/or sought medical intervention sooner.

93. As a direct and proximate result of Defendants' failure to warn, Plaintiff suffered continued exposure, disease, and resulting damages, as alleged in ¶¶ 42-55 and 63.

## XI. COUNT VI: DISABILITY-BASED UNLAWFUL TERMINATION / DISABILITY DISCRIMINATION (DEFENDANTS ROGERS CARTAGE CO., INC. AND TANKSTAR USA, INC.)

94. Plaintiff re-alleges ¶¶ 40-41 and 49-63.

95. Plaintiff disclosed his diagnosis and medical condition to Rogers Cartage Co., Inc. and Tankstar USA, Inc. and provided medical documentation, including work restrictions prohibiting further handling, transfer, or direct exposure to chemicals, as alleged in ¶¶ 54-56.

96. Rogers Cartage Co., Inc. and Tankstar USA, Inc. maintained and supervised Plaintiff's employment relationship while Plaintiff resided and worked from Alabama and made or influenced employment-related decisions affecting Plaintiff in Alabama, as alleged in ¶¶ 56-62.

97. After receiving Plaintiff's diagnosis and medical restrictions, Defendants removed Plaintiff from work and terminated his employment, as alleged in ¶¶ 56-60.

98. Defendants did so after stating, directly or through their agents, that the matter was now all about liability and strictly corporate now, and after indicating that the decision was being driven by corporate concerns, as alleged in ¶¶ 57-58.

99. Defendants did not provide Plaintiff with a legitimate written explanation for the termination, and Plaintiff does not believe he was ever provided a termination letter.

100. Upon information and belief, representatives of Rogers indicated to Plaintiff's sister, Millette Thomas, that a termination letter would be provided, yet no such letter has been produced, as alleged in ¶ 59.

101. Upon information and belief, Defendants terminated Plaintiff because of his diagnosis, his medical restrictions, his perceived inability to perform hazardous work, perceived liability exposure, anticipated costs, and/or concerns arising from Plaintiff's occupational illness.

102. Upon information and belief, Defendants failed to meaningfully consider or offer available non-hazardous work alternatives, despite the existence of non-hazardous work within Plaintiff's job duties, as alleged in ¶¶ 40-41 and 62.

103. As a direct and proximate result of Defendants' conduct, Plaintiff suffered loss of income, loss of employment, loss of benefits, loss of medical coverage, emotional distress, and other damages, as alleged in ¶ 63.

104. Defendants' conduct constituted unlawful discrimination and other unlawful adverse employment action based on Plaintiff's medical condition, disability, perceived disability, work restrictions, and related protected circumstances, under all legal theories supported by the facts and applicable law.

## XII. DAMAGES

105. Plaintiff has incurred substantial past medical expenses, including hospitalization, oncology evaluation, imaging, biopsy, laboratory testing, prescription medications, and follow-up care.

106. Plaintiff will continue to incur future medical expenses for treatment, monitoring, medications, oncology care, nephrology care, and management of complications from metastatic renal cell carcinoma and chronic kidney disease.

107. Plaintiff has suffered lost wages and loss of earning capacity.

108. Plaintiff has suffered loss of employment-related benefits and medical coverage.

109. Plaintiff has suffered pain and suffering, emotional distress, mental anguish, fatigue, weakness, and loss of normal life activities.

110. Plaintiff has suffered permanent and continuing injury, including metastatic cancer, chronic kidney disease, and ongoing treatment-related limitations.

## XIII. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## XIV. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendants, and award:

A. Compensatory damages in an amount to be determined by the jury;

B. Past and future medical expenses;

C. Past and future lost wages, benefits, and earning capacity;

D. Damages for pain and suffering, emotional distress, and mental anguish;

E. Punitive damages to the extent allowed by law and supported by the evidence;

F. Costs of this action;

G. Prejudgment and post-judgment interest to the extent allowed by law; and

H. Such other and further relief as the Court deems just and proper.

Respectfully submitted this 27th day of March, 2026.

s/ Dwayne A. Parham
Attorney for Plaintiff Lawrence Arrington
The Parham Firm
9318 Willow Creek Dr., Suite L
Montgomery Village, MD 20886
Telephone: (202) 650-7109
Email: dwayne@parhamfirm.com